**\*NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

———————————————————
)
INTERNATIONAL BROTHERHOOD          )          Civil Action No.:10-2473 (FLW)
OF ELECTRICAL WORKERS, LOCAL       )
UNION 269; BOARD OF TRUSTEES OF    )
THE INTERNATIONAL                  )
BROTHERHOOD OF ELECTRICAL          )
WORKERS LOCAL UNION 269            )          **OPINION**
PENSION FUND, JOINT APPRENTICE     )
& TRAINING FUND, BENEFIT FUND,     )
TEMPORARY DISABILITY FUND,         )
SUPPLEMENTAL FUND, WELFARE         )
FUND AND ANNUITY FUND,             )
                                   )
              Petitioners,         )
v.                                 )
                                   )
LIGHTON INDUSTRIES INC.,           )
                                   )
              Respondent.          )
———————————————————

**WOLFSON, United States District Judge:**

Petitioners International Brotherhood of Electrical Workers, Local Union 269 ("Local 269") and Board of Trustees of the International Brotherhood of Electrical Workers Local Union 269 Pension Fund, Joint Apprentice & Training Fund, Benefit Fund, Temporary Disability Fund, Supplemental Fund, Welfare Fund and Annuity Fund ("Fund Trustees") (collectively, "Petitioners") initiated this action against Lighton Industries Inc. ("Lighton" or "Respondent") to enforce a labor arbitration award obtained by Petitioners against Lighton. Presently before the Court is Petitioners' petition to confirm the arbitration award, as well as Respondent's cross-motion to vacate the arbitration award and for other relief. For the reasons set forth below, the Court confirms the arbitration award, and denies Respondent's motion to vacate the award.

I.      **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

For the purposes of this motion, the Court will only recount relevant facts.  Petitioners are local labor organizations associated with the International Brotherhood of Electrical Workers ("IBEW"), each with its office in Trenton, New Jersey.  Respondent is a general, electrical, and solar panel contractor with its principal office in Lakewood, New Jersey.  (*See* P. Aliseo Aff. at ¶ 2).   Lighton entered into a collective bargaining agreement ("CBA") through the South Jersey National Electrical Contractors Association ("SJ/NECA") with various locals of the IBEW.  (*See Id*. at ¶ 6).  This CBA ("Local 269 CBA"), to which Local 269 and Respondent were signatories, covered the period October 1, 2007 through September 30, 2010, and governs the instant dispute. Lighton also has CBAs with bricklayers, building laborers, operating engineers, mechanical contractors, and sheet metal workers. (*See Id*. at ¶ 7).

According to Paul Aliseo ("P. Aliseo"), Vice President of Lighton, Lighton was invited to bid on the J&J Janssen Pharmaceutical Solar Project ("SPV Farm Project") for SunPower Corp. ("SunPower") in late February / early March 2010.  (*See Id*. at ¶ 4).  The SPV Farm Project would consist of the installation of a 4.2 megawatt power tracker system at the Janssen Pharmaceutical SPV Farm, which is located in Tittusville, New Jersey, a geographical area covered by the Local 269 CBA.  (*See Id*.; *see also* Pet'r's Pet. To Confirm at ¶ 9).  On March 8, 2010, Lighton submitted its proposal to SunPower for the SPV Farm Project.  (*See* P. Aliseo Aff. at ¶ 5).  On or about March 19, 2010, Local 269 business manager Dennis Doyle ("Doyle") learned of Lighton's bid.  (*See* Pet'r's Pet. To Confirm at ¶ 9).  Thereafter, Doyle alleges that he contacted P. Aliseo and told him that certain work on the SPV Farm Project should be assigned to Local 269 workers pursuant to the Local 269 CBA, which provides that bargaining unit work includes "[a]ll handling settling, and installation of all photovoltaic and related equipment,

2

including all components for the mounting and support thereof."  (*See Id*. at ¶ 10; *see also* Watson Cert., Ex. B, Article IX).

On or about April 2, 2010, Doyle learned that Lighton was awarded the SPV Farm Project.  (*See* Pet'r's Pet. To Confirm at ¶ 11).  Doyle also learned that "Lighton had subcontracted a portion of the SPV Farm Project work, which includes the unloading, handling, and installation of components specifically intended for the mounting and support of the SPV" to J. Fletcher Creamer & Son ("Creamer"), which is not a signatory to the Local 269 CBA.  (*See Id*. at ¶¶ 11-12).  Doyle believed that this work constituted bargaining unit work pursuant to the Local 269 CBA, and that by subcontracting the SPV Farm Project work to Creamer, Lighton was in violation of the CBA.  (*See Id*. at ¶ 12).  According to P. Aliseo, "[a]t the time of [Lighton's] initial proposal to SunPower, Lighton intended to subcontract the steel erection work . . . for the SPV Farm Project to [Creamer] . . . [because] Lighton does not possess the expertise that Creamer possessed in [these] areas[.]" (P. Aliseo Aff. at ¶ 8).  P. Aliseo further claims that while SunPower did verbally accept Lighton's proposal around the time alleged by Doyle, this acceptance was "subject to the award and execution of a [s]ubcontract [with Creamer]."  (*See Id*.).

Thereafter, on or about April 20, 2010, Doyle had a telephone conversation with Gerald Aliseo ("G. Aliseo"), President of Lighton.  (*See Id*. at ¶ 13; *see also* G. Aliseo Aff. at ¶¶ 1, 3).  Doyle claims that he told G. Aliseo that the subcontracting of the work to Creamer constituted a violation of Articles 2.10(B) and 2.13 of the Local 269 CBA because Creamer did not recognize the IEBW or one of its local unions as the collective bargaining representative of its employees.  (*See Id*.).   Subsequently, SJ/NECA chapter manager Joseph A. Knecht, Jr. ("Knecht") encouraged Local 269 to meet with Lighton so that the dispute could be resolved without

resorting to formal proceedings.  (*See* Respt's Cross-Pet. at ¶ 14).  P. Aliseo and G. Aliseo met with Doyle, but the parties were unsuccessful in resolving their dispute.  (*See* Pet'r's Pet. To Confirm at ¶ 14).  Lighton claims that immediately after the meeting, G. Aliseo spoke with Sam Pratt ("Pratt"), project manager for SunPower, and informed him that Local 269 was continuing to claim the rights to the erection, welding, and mounting of the structural steel support system. (*See* Respt's Cross-Pet. at ¶ 20).  Pratt informed Lighton that SunPower was no longer planning on subcontracting that portion of the work to Lighton, and instead would be subcontracting the work directly to Creamer.  (*See Id*.).  Ultimately, SunPower made the decision to award separate subcontracts to both Lighton and Creamer covering different scopes of work.  ( *See* Pratt Aff., ¶¶ 2-4).  Indeed, SunPower has two separate subcontracts, one directly with Creamer and one directly with Lighton; the Creamer subcontract contains the site construction, foundations and steel erection in its scope of work, while the Lighton subcontract contains the electrical work in its scope of work.  (*See* Urban Aff., ¶ 3).

On April 28, 2010, Local 269 filed a grievance pursuant to Article 1.6 of the Local 269 CBA and requested that the Labor-Management Committee ("LMC") hold a hearing within 48 hours as required by the Local 269 CBA.  (*See* Pet'r's Pet. To Confirm at ¶ 15; *see also* Watson Cert., Ex. B, Article IX).  The grievance alleged that Lighton had violated provisions of the Local 269 CBA by subletting, assigning, and/or transferring the handling, setting, and installation of photovoltaic and related equipment to Creamer for the SPV Farm Project.  (*See* G. Aliseo Aff., Ex. E.).  Specifically, the grievance alleged that Lighton was in violation of Sections 2.10(B) and 2.13(A), which provide:

> 2.10 (B) The subletting, assigning, or transfer by an individual [e]mployer of any work in connection with electrical work to any person, firm or corporation not recognizing the IBEW or one of its Local Unions as the collective bargaining representative of his employees on any electrical work in the jurisdiction of this or

4

any other Local Union to be performed at the site of the construction, alteration, painting or repair of a building, structure or other work, will be deemed a material breach of this Agreement.

2.13 (A) In order to protect and preserve, for the employees covered by this Agreement, all work heretofore performed by them, and in order to prevent any device or subterfuge to avoid the protection and preservation of such work, it is hereby agreed as follows: If and when the [e]mployer shall perform any on-site construction work of the type covered by this Agreement, under its own name or under the name of another, as a corporation, company, partnership, or any other business entity including a joint venture, wherein the Employer, through its officers, directors, partners or stockholders, exercises either directly or indirectly management control or majority ownership, the terms and conditions of this Agreement shall be applicable to all such work.  All charges or violations of this Section shall be considered as a dispute and shall be processed in accordance with the provisions of this Agreement covering the procedure for the handling of grievances and the final and binding resolution of disputes.

(See Pet'r's Pet. To Confirm at ¶ 16; see also Watson Cert., Ex. B).  Local 269 requested the

remedies provided by Section 2.13(B)-(C) be awarded by the LMC.

(B) As a remedy for violations of this Section, the [LMC] . . . are empowered, in their discretion and at the request of the Union, to require an Employer to (1) pay to affected employees covered by this Agreement, including registered applicants for employment, the equivalent of wages lost by such employees as a result of the violations; and (2) pay into the affected joint trust funds established under this Agreement any delinquent contributions to such funds which have resulted from the violations.  Provision for this remedy herein does not make such remedy the exclusive remedy available to the Union for violation of this Section nor does it make the same or other remedies unavailable to the Union for violations of other Sections or other Articles of this Agreement.

(C) If, as a result of violations of this Section, it is necessary for the Union and/or the Trustees of the joint trust funds to institute court action to enforce an award rendered in accordance with subsection (B) above, or to defend an action which seeks to vacate such award, the Employer shall pay any accountants' and attorneys' fees incurred by the Union and/or Fund Trustees, plus cost of the litigation, which have resulted from the bringing of such court action.

(See Id.).

Several letters dated April 28, 2010, were exchanged between the parties.  First, Knecht,

on behalf of the LMC, sent a letter to G. Aliseo and Lighton to inform them of the grievance

filed by Local 269 and scheduling Lighton and Local 269 to participate in arbitration before the LMC on April 30, 2010.  (*See* G. Aliseo Aff., Ex. D).   Knecht's letter "recommended that a representative from [Lighton] be present at this hearing[,]" and warned Lighton that it would be "represented by the SJ/NECA and informed of the outcome" if Lighton failed to have a representative present.  (*See Id*.).   Second, Doyle sent a letter to Knecht and Lighton, in which the circumstances surrounding the alleged violations were detailed.  (*See* G. Aliseo Aff., Ex. E).   Further, Doyle referenced Section 9.2 of the Local 269 CBA, which provides that, "[a]ll handling, setting, and installation of all photovoltaic and related equipment, including all components for the mounting and support thereof" falls under the Local 269 CBA.  (*See Id*.).   Doyle also noted that "given Lighton's representation by the [SJ/NECA] and the labor relations policy of swiftly and economically resolving disputes, the [LMC's] long-standing procedure is that attorneys are not admitted into the hearing." (*See Id*.).   Third, G. Aliseo sent a letter to the LMC informing it of Lighton's intention to not attend the arbitration before the LMC "due to the fact that our client, [SunPower], has re-assigned the disputed scope of work to another contractor." (*See* G. Aliseo Aff., Ex. G).

On April 30, 2010, the arbitration was held before the LMC.  (*See* Watson Cert., Ex. C at p. 1).  Lighton did not attend and was represented by Knecht of the SJ/NECA.  (*See Id*. at p. 5).  Doyle testified on Local 269's behalf. (*See Id*. at p. 4). Knecht told the LMC that "Lighton had expressly approved of NECA's representation at the hearing by Mr. Knecht" and had not requested a postponement.  (*See Id*.).  Lighton, however, argues that it did not authorize Knect to act as its representative.  (P. Aliseo Aff. at ¶ 20).  Knecht testified:

> i) that Lighton ha[d] not in the past performed the type of work that it sought to sub-contract to Creamer;
> ii) that Lighton did not believe that Local 269 could provide qualified workers to perform the work;

iii) that Lighton also performs work as a general contractor; and
iv) that [G. Aliseo], in a telephone conversation on April 29, 2010, told [Knecht]
that Lighton did not have an executed contract with Creamer[.]

(*See* Watson Cert., Ex. C at p. 5). Upon cross-examination, Knecht stated that Lighton had solicited a price from Creamer on its own initiative because it did not believe that Local 269 or Lighton was capable of providing qualified workers to perform the work, and confirmed that Lighton had informed SunPower of the dispute with Local 269. (*See Id*. at p. 6).

The LMC found Doyle's testimony and documents credible, and "[s]pecifically . . . credit[ed] [Doyle's] undisputed testimony that [G. Aliseo] informed him that Lighton had a contract(s) to perform the disputed work and thus was in control thereof." (*See Id*.). While the LMC found portions of Knecht's testimony on behalf of Lighton credible, it did find that "Lighton was aware of its obligations under the [Local 269 CBA] with respect to subcontracting." (*See Id*. at p. 7). Further, the LMC noted that it was drawing an adverse inference from G. Aliseo and P. Aliseo's "failure and refusal to attend the hearing and submit to questioning about its role in the matter." (*See Id*.). The LMC also stated that, in rendering its decision, it had considered Lighton's decision to inform SunPower of the dispute with Local 269, which led to SunPower "remov[ing] the disputed work from Lighton's contract and award[ing] the work directly to Creamer in order to ostensibly extract Lighton from its contract predicament with Local 269." (*See Id*.).

Before executing its order, the LMC explained why it was rejecting Lighton's two defenses. (*See Id*. at p. 8). The LMC found Lighton's first defense – that it was not equipped to perform the work – unpersuasive in light of Lighton's ability to subcontract the work to another firm in accordance with the Local 269 CBA. (*See Id*.). Lighton's second defense – that Local 269 could not provide the sufficient number of qualified workers – was also rejected on the basis

7

that Local 269 "was very capable of providing a sufficient number of qualified workers[.]"  (*See Id*.).  Further, the LMC noted that Lighton had never even approached Local 269 to question whether it could furnish the required workers.  (*See Id*.).  Thus, the LMC found that it was not appropriate for Lighton to independently make a determination that it was free to subcontract the disputed work to Creamer.  (*See Id*.).

> Accordingly, the LMC held that:
>
> Lighton was in control of the work from the beginning of the process, and Lighton, by way of submitting Creamer's price to its client rather than a price obtained from an IBEW subcontractor, as part and parcel of its own bid, did thereby effectively subcontract bargaining unit work to Creamer in violation of §2.10(B) of the [Local 269 CBA].
>
> . . .
>
> Lighton has engaged in conduct that rises to a subterfuge proscribed by §2.13(A) and thus Lighton remains responsible to the employees covered by the [Local 269 CBA] for the on-site construction work "heretofore performed by them".  The purported transfer of Lighton's subcontract with Creamer to [SunPower] will not relieve Lighton of its responsibilities under the [Local 269 CBA].

(*See Id*. at p. 7-8).  The LMC held that Lighton must cease and desist from any conduct that is not in compliance with the Local 269 CBA.  (*See Id*.).  Further, the LMC ordered Lighton to immediately retake control of the disputed work and perform it in accordance with the terms of the Local 269 CBA and/or:

> make whole the employees covered by the [Local 269 CBA] by: (a) paying to affected employees covered by this Agreement, including registered applicants for employment, the equivalent of wages lost by such employees as a result of the violations; and (b) pay into the affected joint trust funds established under the Agreement any delinquent contributions to such funds which have resulted from the violations.

(*See Id*. at p. 9).  Lighton was also ordered to provide Local 269, "not later than thirty (30) days after the completion of the [SPV Farm Project], any and all documentation necessary to compute the amounts owed to employees and the affected joint trust fund" as described in Section 4 of the

Local 269 CBA.  (*See Id*.).  Lastly, the decision provided that if Local 269 and/or the Board or Trustees find it necessary to institute court action to enforce the LMC's award, Lighton would be liable to Local 269 and/or the Fund Trustees for accountants' and attorneys' fees, plus cost of the litigation.  (*See Id*.).  A copy of the arbitration order was served on Lighton by regular and certified mail.  (*See Id*. at p. 11).  According to Petitioners, Respondent has "failed and refused in all respects, and continues to fail and refuse in all respects, to comply with the April 30, 2010 Decision and Order and to voluntarily satisfy the arbitration award issued by the LMC."  (*See* Pet'r's Pet. To Confirm at ¶ 26).

Thereafter, on May 14, 2010, Petitioners filed this action to confirm the LMC's arbitration award.  (*See Id*).  On or around June 8, 2010, Lighton filed an answer (*See* Resp't's Answer), cross-petition to vacate the arbitration award and for other relief (*See* Resp't's Cross-Petition), and a letter brief (*See* Resp't's Br.).  On June 28, 2010, Petitioners filed a letter brief in support of their motion to confirm the arbitration award and in opposition to Respondent's cross-motion to vacate the arbitration award.  (*See* Pet'r's Reply Br.).  For the reasons that follow, Petitioners' petition to confirm the arbitration award is granted, and Respondent's cross-motion is denied.[1]

## II.   STANDARD OF REVIEW

Pursuant to the Federal Arbitration Act ("FAA"), a district court is permitted to vacate arbitration awards "only under exceedingly narrow circumstances." *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 557 (3d Cir. 2009) (quoting *Dluhos v. Strasberg*, 321 F.3d 365, 370 (3d Cir. 2003)).  "When parties to a CBA elect to have their disputes settled through arbitration . . . [the Court does] not review the merits of the decision or

---

[1] This Court has jurisdiction under Section 301 of the Labor-Management Relations Act of 1947, as amended, 29 U.S.C.A. § 185, and the Federal Arbitration Act, 9 U.S.C.A. §§ 1-13.

correct factual or legal errors." *Dauphin Precision Tool v. United Steelworkers of America*, 338

Fed. Appx. 219, 222 (3d Cir. 2009) (citing *Major League Baseball Players Ass'n v. Garvey*, 532

U.S. 504, 509 (2001); *Major League Umpires Ass'n v. Am. League of Prof'l Baseball Clubs*, 357

F.3d 272, 279 (3d Cir. 2004)). The limited circumstances in which a court may vacate an

arbitration award are:

> (1) where the award was procured by corruption, fraud or undue means; (2) where
> there was evident partiality or corruption in the arbitrators, or either of them; (3)
> where the arbitrators were guilty of misconduct in refusing to postpone the
> hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent
> and material to the controversy; or of any other misbehavior by which the rights
> of any party have been prejudiced; or (4) where the arbitrators exceeded their
> powers, or so imperfectly executed them that a mutual, final, and definite award
> upon the subject matter submitted was not made.

9 U.S.C. § 10(a); *see also New Jersey Carpenters Funds v. Professional Furniture Services*, No.

3:08-3690, 2009 WL 483849, *2 (D.N.J. Feb. 25, 2009) (quoting 9 U.S.C. § 10(a)).

Therefore, this Court will uphold an award "so long as it draws its essence from the

[CBA]" and is not merely the arbitrator's "own brand of industrial justice." *Veeder Root Co. v.

Local 6521*, 293 Fed. Appx. 924, 925 (3d Cir. 2008) (quoting *USWA v. Enterprise Wheel & Car

Corp.*, 363 U.S. 593, 597 (1960)).  In other words, unless the "arbitrator's decision is wholly

unsupported by the agreement's plain language or the arbitrator fails to adhere to basic principles

of contract construction[,]" a court is not permitted to overturn that decision.  *Cacace Associates,

Inc. v. Southern New Jersey Bldg. Laborers Dist. Council*, No. 07-5955, 2009 WL 424393, *3

(D.N.J. Feb. 19, 2009) (citing *News Am. Publications, Inc., Daily Racing Form Div. v. Newark

Typographical Union, Local 103*, 921 F.2d 40, 41 (3d Cir. 1990); *Exxon Shipping Company v.

Exxon Seamen's Union*, 801 F. Supp. 1379, 1384 (3d Cir. 1992)).  This Court's obligation is to

"uphold an arbitrator's judgment if the decision, on its face, was drawn from the parties'

agreement or is remotely based on reasonable contractual interpretation." *Id*. (citing *United Trans. Union Local 1589 v. Suburban Transit Corp.*, 51 F.3d 376, 379 (3d Cir. 1995)).

However, the question of whether a party has agreed to arbitrate is a legal question which requires plenary review.  *See U.S. Small Business Admin. v. Chimicles*, 447 F.3d 207, 209 (3d Cir. 2006). The Third Circuit has recognized three guiding principles for courts to consider when deciding whether a dispute is arbitrable:

> First, arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.  Second, in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims.  Third, where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that, an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.  Doubts should be resolved in favor of coverage.

*United Steelworkers v. Rohm & Haas Co*., 522 F.3d 324, 330-31 (3d Cir. 2008) (internal quotation marks and citations omitted).  Further, the Supreme Court has stated that "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration[,]" as well as the Federal Arbitration Act's preference for resolving "any doubts concerning the scope of arbitrable issues . . . in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."  *See Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983).

## III.    DISCUSSION

Local 269 seeks confirmation of the LMC's arbitration award, as well as attorney's and accountant's fees, litigation costs, and an order requiring Lighton to comply with discovery necessary to compute the arbitration award owed to Petitioners.  Lighton raise several defenses

11

to the enforcement of the arbitration award: (1) the dispute is not substantively arbitrable; (2) the cease and desist order of the LMC was improper under the Norris-LaGuardia Act; (3) the National Labor Relations Board is the proper party to hear this case due to competing claims for the disputed work; (4) tripartite arbitration should be used due to conflicting arbitration awards; (5) the hearing procedure was unfair and violated Lighton's due process rights; and (6) the Fund Trustees should not be a party in the present action.

## A.    SUBSTANTIVE ARBITRABILITY OF DISPUTE

Respondent first argues that the dispute between itself and Local 269 is not substantively arbitrable. Respondent reasons that it never had a contract with SunPower for the work claimed by Petitioners and awarded in the May 3, 2010 LMC decision, and that the record lacks any evidence of a subterfuge involving Lighton.[2]  In response, Petitioner argues that the dispute is arbitrable because the Local 269 CBA contains a broad arbitration clause that encompasses the present dispute.

"The inclusion of a broad arbitration clause in a collective bargaining agreement gives rise to a presumption of arbitrability which may be rebutted only by 'the most forceful evidence of a purpose to exclude the claim from arbitration.'"  *See Rite Aid of Pennsylvania*, *Inc. v. United Food and Commercial Workers, Local 1776*, 595 F.3d 128, 131 (3d Cir. 2010) (quoting *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986)) (quoting *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 585 (1960)).  Where there is a broad arbitration clause, "[i]n the absence of any express provision excluding a particular

---

[2] Respondent also contends that LMC had no authority to hear the dispute because Lighton raised the issue of substantive arbitrability by informing Knecht that Lighton did not possess the contract and would not be attending the arbitration.  The Court is not persuaded by this argument in light of the broad arbitration clause, discussed *infra*, as well as the Letter of Assent permitting SJ / NECA to represent Lighton in collective bargaining procedures, discussed *infra* Section 3(E).

grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *Warrior & Gulf*, 363 U.S. at 584-85.  In *AT & T*, 475 U.S. at 650, the Supreme Court characterized as "broad" a clause that provided for arbitration of "any differences arising with respect to the interpretation of this contract or the performance of any obligation hereunder."   Similarly, the Third Circuit has held to be "broad" an arbitration clause covering "any dispute arising out of a claimed violation of this Agreement". *E.M. Diagnostic Sys., Inc. v. Local 169, Int'l Bhd. Of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 812 F.2d 91, 95 (3d Cir. 1987).

At the outset, the Court notes that under Supreme Court and Third Circuit precedent, the Local 269 CBA's arbitration clause, which requires "[a]ll grievances or questions in dispute" to be referred to the LMC, is clearly broad.  (*See* Watson Cert., Ex. B, Section 1.6). Respondent does not dispute this interpretation.  As such, a presumption of arbitrability applies.  For the following reasons, the Court finds Lighton's arguments that the dispute was not substantively arbitrable unpersuasive.

The LMC's decision to arbitrate the dispute between Lighton and Local 269 was proper. Neither the broad arbitration clause, nor any other provision in the Local 269 CBA, requires that formal business contracts be in place before a signatory can be forced to arbitrate an alleged violation under the CBA.  Instead, Section 2.10(B) provides that the subletting, assigning, or transferring of work to persons or entities who do not recognize Local 269 as their collective bargaining representative is not permitted.  In his affidavit, P. Aliseo admits that Lighton used Creamer's price in its bid to SunPower, and that SunPower verbally accepted the agreement.  (P. Aliseo Aff. at ¶ 9-10).  Creamer did not have a CBA with Local 269.  As a result, the LMC found that by "submitting Creamer's price to its client [SunPower] rather than a price obtained

from an IBEW subcontractor, as part and parcel of [Lighton's bid,]" Lighton had violated
Section 2.10(B) of the Local 269 CBA.  The fact that Lighton never signed a contract with
SunPower is irrelevant to the present discussion.  Clearly, the dispute implicated a provision in
the Local 269 CBA, and thus, it was arbitrable under that CBA.

Because the disputes were arbitrable, the Court must defer to the LMC's finding, absent
any evidence of fraud or lack of authority, that Lighton violated Section 2.13(A) of the Local
269, which is an anti-subterfuge clause that seeks to "prevent any device or subterfuge to avoid
the protection and preservation of [all work heretofore performed by Local 269]."  SunPower
accepted Lighton's bid in late March / early April of 2010.  Lighton signed a subcontract with
SunPower on April 2, 2010.  (*See* P. Aliseo Aff. at ¶ 17). At that time, Lighton became aware of
Local 269's dispute.  G. Aliseo, by his own admission, spoke with Pratt, SunPower's project
manager, and informed him of the dispute.   In response, Pratt unilaterally pulled the disputed
work from Lighton, and then announced SunPower's intention to subcontract directly with
Creamer with respect to the disputed work; however, Lighton was subcontracted to perform
electrical work for the Project.  Because of these facts, the LMC found that Lighton had enlisted
the assistance of SunPower in order to remove itself from obligations that would constitute
violations of the Local 269 CBA.  There is nothing present in the record that supports a finding
that this issue should not have been before the arbitrators.  The LMC's decision to arbitrate the
dispute was appropriate.

**B.     PLENARY HEARING**

Respondent argues that under the Norris-LaGuardia Act ("NLA"), 29 U.S.C. §§ 101-115
(1988), it is necessary for a plenary hearing to be held prior to the enforcement of the LMC's
cease and desist order.  In accordance with the NLA, the Third Circuit will only permit a district

court to "issue [a] restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute, except on the basis of findings of fact made and filed by the court in the record of the case" when a four-step test has been met.  *See* 29 U.S.C. § 101.

> First, [courts] must ascertain whether this action involves a "labor dispute" as that term is used in the NLA. Second, [courts] must decide whether the relief fashioned by the district court involves one or more injunctions as that term is used throughout the NLA. Third, . . . [courts] must then determine whether the district court complied with the procedural requirements of the NLA. Fourth, . . . [courts] must determine whether the dispute falls within a judicially-carved exception to the NLA.

*See Lukens Steel Co. v. United Steelworkers*, 989 F.2d 668, 675-76 (3d Cir. 1993) (finding district court lacked jurisdiction under NLA to deem previous arbitration ineffectual and permanently enjoining previous arbitrator from serving in subsequent hearings between the parties).  Here, the present case plainly fails to meet the second prong.  The "cease and desist" order by the LMC merely required Respondent to comply with the terms of the Local 269 CBA. Petitioners do not seek an injunction ordering Respondent to comply with the Local 269 CBA. Respondent is bound by the terms of the Local 269 CBA because it is a signatory, and as Petitioners correctly assert, the Local 269 CBA has "a grievance procedure . . . in place and the parties may avail themselves of this procedure" if Local 269 or Lighton believes a violation has taken place.  (*See* Pet'r's Reply Br. at 15).  Therefore, there is clearly no need for a plenary hearing.

### C.   NATIONAL LABOR RELATIONS BOARD'S JURISDICTION

Respondent next asserts a jurisdictional defense under Section 10 of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 160(a)-(c), which empowers the National Labor Relations Board ("NLRB") to prevent unfair labor practices.  Respondent argues that it is essential that the NLRB have the opportunity to decide in the first instance whether the LMC's order that Lighton

retake control of the SPV Farm Project work constituted an unfair labor practice under Section 8 of the NLRA, which prohibits forcing or requiring any employer to assign particular work to a labor organization.[3]   Respondent is correct that under the Supreme Court's "*Garmon* preemption" doctrine, elucidated in *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 244-5 (1959), "when an activity is arguably subject to Sections 7 or 8 of the [NLRA], state as well as the federal [c]ourts must defer to the exclusive competence of the NLRB if the danger of state interference with national policy is to be averted."   (*See Id*.).   However, this suit is brought under Section 301 of the LMRA, in which "Congress 'carved out' an exception to the NLRB's exclusive jurisdiction by granting district courts jurisdiction over suits for violations of contracts between an employer and a labor organization representing employees in an industry affecting commerce." *Mack Trucks, Inc. v. International Union, UAW*, 856 F.2d 579, 585 (3d Cir. 1988) (citing *Vaca v. Sipes*, 386 U.S. 171, 179 (1967)).   Therefore, even if an action brought under Section 301 alleging a violation of CBA could also constitute an unfair labor practice under Sections 7 or 8 of the NLRA, the jurisdiction conferred to district courts by Section 301 is not obviated.   *See Id*. (citing *Smith v. Evening News Ass'n*, 371 U.S. 195, 197 (1977)); *see also Farmer v. Carpenters Local 25*, 430 U.S. 290, 297 n. 8 (1977) ("Section 301 of the LMRA . . . authorizes suits for breach of a [CBA] even if the breach is an unfair labor practice within the [NLRB's] jurisdiction) (citing *Evening News*, 371 U.S. 195); *Trustees of the Twin City Bricklayers Fringe Benefit Funds v. Superior Waterproofing, Inc.*, 450 F.3d 324, 334 n. 4 (8th Cir. 2006) ("Garmon preemption is unrelated to § 301 of the LMRA, for it arises under the NLRA.") (citation omitted).

---

[3] Respondent also references the alleged competing claims for the SPV Farm Project work, discussed *infra* Section 3(D), but this is irrelevant in light of the rejection of Respondent's argument.

Prior to this suit, Respondent filed NLRB charges against Local 269 and another union, as well as a request for a § 10(k) determination by the NLRB.  Because of this filing, Respondent argues that the NLRB has exclusive jurisdiction over the instant dispute.  For support, Respondent relies on *J.F. While Contracting Co. v. Local 103 Int'l Bhd. of Elec. Workers*, 890 F.2d 528, 529 (1st Cir. 1989), in which the court stated that, "[i]t is well-established law that courts are not to enforce an arbitration award that conflicts with a § 10(k) determination" (citations omitted).  Here, a § 10(k) determination has not been made, and Respondent offers no authority for the proposition that the mere filing of a request for such a determination forecloses any efforts by a district court to confirm an arbitration award in a suit brought under Section 301 of the LMRA.  Therefore, this argument is unavailing.

## D.     RESOLVING THE DISPUTE BY TRIPARTITE ARBITRATION

Respondent next urges this Court to compel tripartite arbitration between Lighton, Local 269, and Laborers' International Union of North America Local 172/472 ("Laborers") because it believes there are now "at least two competing claims for the same work and an assignment of the same is thereby being forced" by Petitioners.  (*See* Resp't's Br. at 10-12).  After it contracted with SunPower on May 17 2010, Creamer assigned certain work – including steel erection – to Laborers.  (Resp't's Cross-Petition at ¶ 30-31).  Creamer and Laborers became involved in a dispute over whether Laborers Local 172/472 was the correct party to handle the installation of energy-related technology on the SPV Farm Project.  (*See* Urban Aff., Ex. U).  On June 4, 2010, approximately one month after the LMC's decision in the dispute between Local 269 and Lighton, an arbitrator found the disputed work was properly assigned by Creamer to Laborers. (*See Id.*).

The issue of whether Section 301 of the LMRA permits federal courts to compel tripartite arbitration has not been decided by the Third Circuit. In *Window Glass Cutters v. American St. Gobain Corp.*, 428 F.2d 353, 355 (3d Cir. 1970), the court stated in dicta that "it appears that on a proper record a District Court clearly would have the authority to provide for joint arbitration on a labor dispute." In reliance mainly on that language, as well as *Columbia Broadcasting System, Inc. (CBS) v. American Recording and Broadcasting Association*, 414 F.2d 1326 (2d Cir. 1969), the court in *RCA Corp. v. Local Union 1666 I.B.E.W.*, 633 F. Supp 1009, 1012-1015 (E.D. Pa. 1986) ordered two unions to participate in tripartite arbitration with an employer to resolve disputes over work assignments made by the employer, where the employer was subject to the possibility of inconsistent arbitration awards, the two unions were competing for the same benefits, and the result of the arbitrations would have substantial impact on the parties' future conduct.

Here, the facts pertinent to the holding in *RCA Corp.* are noticeably absent. Local 269 concedes that it "does not have a contract with Creamer and has no issue with Creamer[,] [n]or does [Local 269] have any issue with the [Laborers] or Creamer's assignment of work to the laborer's in the wake of Lighton's subterfuge that led to SunPower's May 17, 2010 contract with Creamer." (*See* Pet'r's Reply Br. at 19). There is no reason to find, nor has Lighton alleged, that the Laborers would have grounds to bring any type of grievance against Lighton. Additionally, because the arbitration award offers Respondent the choice of assigning the disputed work to Local 269 and/or paying owed wages and funds benefits, there is no assignment of work being forced here. Thus, Respondent's argument in this context is also unavailing.

E.      **RIGHT TO COUNSEL**

Respondent next argues that the procedures of the LMC hearing, which Respondent chose not to attend, violated its due process rights.  Specifically, Respondent claims that it was unfair for the LMC to bar attorneys from the LMC hearing, and contends that it never agreed to such terms when it became a signatory to the Local 269 CBA.  First, contrary to Lighton's assertions, Lighton did authorize SJ/NECA to act "as its collective bargaining representative for all matters contained in or pertaining to the current and any subsequent approved" labor agreement between itself and Local 269 by signing a Letter of Assent on August 6, 1998.[4] (*See* Watson Cert., Ex. A).  Second, and again contrary Lighton's argument, a provision of New Jersey law not permitting a party to an arbitration to waive their right to counsel, N.J.S.A. 2A:23B-4(b)(4), does not apply to disputes arising from CBAs under N.J.S.A. 2A:24-1.1.  Third, while the Third Circuit has not had the occasion to decide this issue, other circuits have recognized that there is no right to counsel during an arbitration proceeding.  *See Eastern Assoc. Coal Corp. v. Local 1503, United*, No. 92-1942, 1993 WL 165015, *4 (4th Cir. May 17, 1993) (no violation of Sixth Amendment right to counsel found where a party, who was subject to criminal investigation for the actions relevant to arbitration hearing, was only permitted to consult with counsel prior to the arbitration); *Castelli v. Douglas Aircraft Co.*, 752 F.2d 1480 (9th Cir. 1985) (party not entitled to have counsel present at arbitration where CBA did not contain language permitting counsel); *cf. New Jersey Carpenters Funds v. CBC Carpet, Inc.*, No. 07-5511, 2008 WL 576990, *2 (D.N.J. Feb. 29, 2008) (holding that a party had failed to demonstrate that a lack of counsel at an arbitration theory provided a basis for vacating an

---

[4] The Court also notes that Lighton, in its letter to Knecht explaining that it was voluntarily not sending its representative to the LMC hearing, made no mention of their objection to the bar on counsel.  (*See* G. Aliseo Aff., Ex. G).

arbitration award).  Therefore, Lighton was not prejudiced by the LMC's decision to not allow attorneys to attend the arbitration.

## F.     FUND TRUSTEES AS A PARTY TO THIS SUIT

Respondent's final argument is that because the Fund Trustees were not parties to the arbitration before the LMC, they should not be permitted to "piggyback" on the forthcoming Decision and Order of this Court.   However, the May 3, 2010 LMC decision required contributions to be made to the funds represented by the Fund Trustees.   Additionally, the LMC decision, in requiring Lighton to pay accountants' and attorneys' fees if court action is necessary, notes that Local Union 269 and/or the Fund Trustees are entitled to those fees.  Fund Trustees are proper parties in this case.

## G.     ATTORNEY'S AND ACCOUNTANT'S FEES

In addition to an order confirming the arbitration award, Petitioners seek reasonable attorney's and accountant's fees and litigation costs.  Petitioners are entitled to attorney's fees as both a matter of law and contract.  Section 502(g) of ERISA, 29 U.S.C. § 1132(g)(2), authorizes awards of attorney fees and costs in any action "in which a fiduciary seeks delinquent fund contributions."  *See Sheet Metal Workers Local 19 v. Keystone Heating and Air Conditioning*, 934 F.2d 35, 39 (3d Cir. 1991); *Local 478 Trucking and Allied Industries Pension Fund v. Jayne*, 778 F.Supp 1289, 1327 (D.N.J. 1991) (citations omitted) (explaining that under § 1132(g)(2), an "[a]ward of … reasonable attorney's fees is mandatory, not discretionary.").   Additionally, Section 2.13(C) of the Local 269 CBA provides for reasonable attorney's and accountant's fees and costs if it is necessary that a court action be filed to enforce an arbitration award.  Thus, Petitioners are entitled to attorney's and accountant's fees and costs.  However, because this Court is also granting Petitioners' request for post-judgment discovery to ascertain the amount of

Petitioners' lost wages and delinquent contribution to the Fund Trustees consistent with the arbitration award, Petitioners are not required to submit their fee applications until the completion of that process.

## IV.   CONCLUSION

Based on the foregoing, Petitioners' petition to confirm the arbitration award is granted. Consequently, Respondent's cross-motion to vacate arbitration award is denied.  Petitioners' request that this Court order Lighton to comply with discovery consistent with the arbitration award so that Local 269 can compute the wages lost by Local 269's workers, as well as the delinquent contributions owed to the Fund Trustees, is also granted.

An order will be entered consistent with this Opinion.

_____ s / Freda L. Wolfson_____
FREDA L. WOLFSON, U.S.D.J

Dated: December 6, 2010

21